```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

Rhonda Cogar,                        :

    Plaintiff,                   :

  v.                                 :       Case No. 2:09-cv-00679

Michael J. Astrue,                   :       JUDGE FROST
Commissioner of Social Security,
                                               :

    Defendant.

## REPORT AND RECOMMENDATION

### I.  Introduction

    Plaintiff, Rhonda Cogar, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability benefits.  That application was protectively filed on July 22, 2005, and alleged that plaintiff became disabled on November 30, 1999.

    After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on February 11, 2008.  In a decision dated March 26, 2008, the Administrative Law Judge denied benefits.  That decision became the final decision of the Commissioner when the Appeals Council denied review on March 20, 2009.

    Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on June 1, 2009.  Plaintiff filed a statement of errors on November 9, 2009, to which the Commissioner responded on December 14, 2009.  No reply brief has been filed, and the matter is now ripe for decision.

### II.  Plaintiff's testimony

    Plaintiff's testimony at the very brief administrative hearing revealed the following.  Plaintiff, who was 51 years old

at the time of the hearing, last worked in December of 1999. She stopped working so that she could stay at home full-time to care for her father. (Tr. 426). She testified that she did not believe her treating doctor, Dr. Patel, was taking her heart condition seriously so she switched physicians in March, 2005. Her heart condition causes her to be very fatigued. (Tr. 427).

### III. The Medical Records

Pertinent medical records reveal the following. Dr. Barton completed a questionnaire on August 19, 2005, indicating that he had been treating plaintiff for cardiomyopathy. He stated that the significant symptoms were dyspnea and fatigue and that the onset date was a year before. (Tr. 129-31). His first treatment note dated June 1, 2005, indicates ongoing treatment for congestive heart failure, which was described at that time as stable and not producing any significant edema or dyspnea. Plaintiff was also diagnosed with depression and hypertension, both of which also appeared to be stable and responding well to treatment. (Tr. 154-56). A note dated June 16, 2005, refers to severe cardiomyopathy and suggests a referral to a cardiologist. (Tr. 147-49). The note dated June 30, 2005, stated that a recent echocardiogram showed a left ventricle ejection fraction of less than 15%. (Tr. 143). A mild enlargement of the heart had been seen on a chest x-ray taken on March 3, 2005. (Tr. 182). Plaintiff was referred to a cardiologist and stated at an office visit on July 19, 2005, that the x-ray was done after an emergency room visit prompted by shortness of breath, and that she had been dsypneic with any activity since that time. (Tr. 242). On March 14, 2007, Dr. Barton expressed the opinion that plaintiff was disabled due to a combination of her heart problems, the treatment for which had included implantation of a defibrillator, asthma, and diabetes. (Tr. 368).

Plaintiff's prior treating physician was Dr. Patel. His

notes are not extremely detailed, but they do show that as early as May, 2004, he was treating plaintiff for a heart condition. (Tr. 317). Edema was not specifically mentioned as a symptom until March 2, 2005. (Tr. 312). Very early treatment notes (from 1996) generally indicate that plaintiff was being treated for obesity as well as hypertension, OCD, anxiety and asthma. (Tr. 351-53).

On July 10, 2001, plaintiff was diagnosed with obsessive-compulsive disorder. At that time, she had mile depression and moderate anxiety and engaged in a number of OCD behaviors. Her prognosis was fair and both medication and cognitive behavioral therapy were recommended. (Tr. 160-61). A state agency reviewer concluded on November 4, 2005, that any psychological impairment was not severe. (Tr. 327A-327N).

Plaintiff was given a mental status exam on January 5, 2006, by John R. Atkinson, M.A. He indicated that the onset of plaintiff's psychological condition was when she was in her twenties. She described compulsive behaviors consuming between one and three hours of time each day. She reported being depressed on and off for twenty-five years. On a typical day, she did routine household chores such as cooking and laundry, and also provided care to her elderly father who had had a stroke. She was diagnosed with a dysthymic disorder as well as OCD and her GAF was rated at 50. Her prognosis was fair with treatment and poor without treatment. (Tr. 375-83). Among other things, Mr. Atkinson stated that plaintiff had a marked impairment in her ability to deal with work stress. (Tr. 387-89).

One additional exhibit was submitted to the Appeals Council. It is a letter from Dr. Blackburn which is undated but which states that, after a review of her medical records, Dr. Blackburn believed it was "obvious, by the severity and chronic nature, of the above noted conditions [cardiomyopathy and subsequent

treatment], that they existed prior to 12/31/2004." (Tr. 419).

### IV. The Expert Testimony

A vocational expert, Ms. White, appeared at the administrative hearing, but she was not asked to testify.

### V. The Administrative Decision

The Commissioner resolved this case by finding that plaintiff did not suffer from a severe impairment at any time prior to the expiration of her insured status on December 31, 2004. The Commissioner noted that plaintiff claimed disability due to a combination of impairments including chronic heart disease, asthma, type 2 diabetes, and two psychological impairments, but found that many of them were not diagnosed or were not symptomatic prior to December 31, 2004. In particular, the Commissioner found that plaintiff's cardiomyopathy was not symptomatic until March, 2005, and that neither her asthma or her diabetes produced severe symptoms prior to that time. Further, although she was treated sporadically for obsessive-compulsive disorder between 1996 and 2004, the Commissioner found that the episodic nature of treatment and the lack of therapy indicated that the disorder was not severe. As a result, the Commissioner found that plaintiff was not entitled to benefits.

### VI. Legal Analysis

In her statement of errors, plaintiff raises four issues. She claims (1) that substantial evidence does not support the Commissioner's decision; (2) that the Commissioner erred in rejecting Mr. Atkinson's opinion; (3) that appropriate weight was not given to the opinion of her treating source, Dr. Barton; and (4) that new evidence - the letter from Dr. Blackburn - compels a remand. The first three issues will be decided under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id.* LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The first issue is whether the record contains substantial support for the Commissioner's conclusion that, prior to December 31, 2004, plaintiff had no severe impairments. Under social security law, a severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical

functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). The question of severity is not related to the plaintiff's age, education, or work experience. A nonsevere impairment is one which would not be expected to interfere with a Plaintiff's ability to work regardless of "whether the claimant was sixty-years old or only twenty-five, whether the claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary." Salmi v. Secretary of H.H.S., 774 F.2d 685, 691-92 (6th Cir. 1985).

Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. Gist v. Secretary of H.H.S., 736 F.2d 352, 357 (6th Cir. 1984); see also Social Security Ruling 86-8 (identifying the question of whether the claimant has a severe impairment as the second step of the sequential evaluation process). An impairment will be considered nonsevere only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." Farris v. Secretary of H.H.S., 773 F.2d 85, 90 (6th Cir. 1985), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). The Commissioner's decision on this issue must be supported by substantial evidence. Mowery v. Heckler, 771 F.2d 966 (6th Cir. 1985). The severe impairment test has been upheld as a permissible interpretation of the Act. Bowen v. Yuckert, 482 U.S. 137 (1987). However, both that decision and applicable rulings indicate that it is not to be used routinely to deny benefits. Its use is restricted to those claimants with "slight

abnormalities that do not significantly limit any 'basic work activity....'" Bowen v. Yukert, supra, at 158 (O'Connor, J., concurring). "Great care" must be used in applying the concept, and any doubt should be resolved in favor of continuing the sequential evaluation process so that vocational factors are taken into account. See Social Security Ruling 85-28.

Here, there was no evidence dating from any time prior to plaintiff's last insured date of December 31, 2004, indicating that she suffered from a severe impairment as defined in the applicable regulation. There were only three possible sources of such information - Dr. Barton's notes and opinion as to disability, Dr. Patel's notes, and the psychological assessment done by Mr. Atkinson. The Commissioner had a reasonable basis for concluding that none of them supported a finding of a severe impairment during the relevant time frame.

Dr. Barton's opinion as to disability was written years after December 31, 2004, and does not make any effort to relate plaintiff's conditions or symptoms to that date. Although there is one reference in his notes to the fact that plaintiff had developed a heart condition on some date prior to December 31, 2004, that note contains no information about whether it limited her ability to perform work-related functions in any way prior to that date. The Commissioner extensively reviewed Dr. Barton's notes and the type of conditions and symptoms he reported in 2005, and could not conclude from these notes whether any of plaintiff's conditions either existed, or were causing any significant symptoms, prior to December 31, 2004. In fact, plaintiff's primary complaints when she first saw Dr. Barton were knots under her skin and sweating, and her heart condition was noted but she denied any shortness of breath, swelling, or chest pain. A reasonable person could have concluded from all of Dr. Barton's record that plaintiff had no severe impairments prior to

December 31, 2004.

Dr. Patel's notes do not materially assist plaintiff's claim. As noted above, they are brief and conclusory, and although they do indicate the presence of some medical conditions, they provide no information about the severity of the conditions or the symptoms they caused. They are simply too vague to support, let alone require, a finding that she had severe impairments while he treated her.

The Commissioner did note, in evaluating plaintiff's psychological conditions, that she had sought treatment for OCD in 2001. However, the administrative decision points out various reasons why that visit did not establish a severe impairment, including plaintiff's failure to follow up for any treatment after that date. Those reasons are supported by the record. Mr. Atkinson's report was rejected not only because it post-dated the relevant time frame by several years but because it did not appear to rely on any identifiable bases for concluding that plaintiff had a long history of psychological disorders beyond her own statement, it was not an evaluation done for treatment purposes, and in some cases the information provided by plaintiff actually conflicted with the other evidence of record. Further, even if plaintiff had psychological conditions during the relevant time period - and the Commissioner determined that she did - the basis of the decision is that they were of only mild severity then. There is simply no evidence in the record contradicting this finding.

Dr. Blackburn's letter was not before the Commissioner when the administrative decision issued, so it can form the basis for an order of remand only under the following standard. The remand provision of 42 U.S.C. §405(g) provide, *inter alia*, that the Court may order a case remanded for further consideration of additional evidence "only upon a showing that there is new

evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  The plaintiff has the burden of proof on the issue of whether a remand is appropriate.

To show good cause, Plaintiff must present some justification for the failure to have acquired and presented such evidence for inclusion in the record during the hearing before the Administrative Law Judge.  <u>Willis v. Secretary of H.H.S.</u>, 727 F.2d 551; <u>Birchfield v. Harris</u>, 506 F.Supp. 251, 252-53 (E.D. Tenn. 1980).  Evidence submitted after the ALJ's decision and which is not reviewed by the Appeals Council cannot be considered by the district court unless good cause is shown for the failure to have presented the evidence to the ALJ.  <u>Cotton v. Sullivan</u>, 2 F.3d 692 (6th Cir. 1993).

To be "material" within the meaning of 42 U.S.C. §405(g), the new evidence must be relevant and probative and must establish a reasonable chance that the Commissioner would reach a different conclusion.  <u>Chancey v. Schweiker</u>, 659 F.2d 676 (5th Cir. 1981); <u>Thomas v. Schweiker</u>, 557 F.Supp. 580 (S.D. Ohio 1983).  New evidence on an issue already fully considered is cumulative, and is not sufficient to warrant remand of the matter.  <u>Carroll v. Califano</u>, 619 F.2d 1157, 1162 (6th Cir. 1980).  Additionally, the new evidence must relate to a condition which affected the plaintiff's ability to work at the time the administrative decision was made.  Evidence concerning a newly-developed medical condition is not ordinarily relevant to the question of whether the plaintiff was disabled at the time the Secretary's decision was entered.  <u>Oliver v. Secretary of H.H.S.</u>, 804 F.2d 964 (6th Cir. 1986).

Here, the Commissioner argues that Dr. Blackburn's letter is not material because it does not specify what records he reviewed

in order to reach his conclusion that plaintiff's conditions developed prior to December 31, 2004. That is so, but even assuming that the records were the same ones before the Commissioner, Dr. Blackburn simply states that the conditions were chronic and took time to develop, but, like other evidence in the record suggesting these conditions existed prior to December 31, 2004, his letter says nothing about the symptoms or limitations they might have produced in that time frame. Therefore, it is unlikely that his letter would have influenced the administrative decision. Further, it was certainly apparent by the time of the administrative hearing that there would be an issue in this case about what conditions plaintiff suffered from, and what symptoms they caused, prior to her last insured date. No explanation has been given as to why this letter, or a similar letter, could not have been obtained prior to the date of the administrative decision. Therefore, the Court agrees with the Commissioner that plaintiff has not satisfied her burden of demonstrating good cause for a sentence six remand.

## VII. Conclusion

For the forgoing reasons, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may

accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge